# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

|  |  |  |
|---|---|---|
| Deloise Guyton, on behalf of herself and others similarly situated, | : : : | Case No.: 3:21-cv-00629-TJC-PDB |
| Plaintiff, | : : | |
| v. | : : | |
| Abrahamsen Gindin, LLC, | : : | |
| Defendant. | : : : | |

## PLAINTIFF'S RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### Introduction

This case centers on the failure of Abrahamsen Gindin, LLC ("Defendant") to register as a consumer collection agency with the Office of Financial Regulation of the Florida Financial Services Commission prior to attempting to collect debts from consumers in Florida.[1] Plaintiff Deloise Guyton alleged that Defendant's conduct violated sections 1692e and 1692f of the Fair Debt Collection Practices Act

---

[1] Pursuant to the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 *et seq.*, prior to engaging in any business in Florida, a person who acts as a consumer collection agency must register with the State of Florida Office of Financial Regulation. Fla. Stat. § 559.553(1).

("FDCPA"), 15 U.S.C. § 1692 *et seq.*[2] While Defendant denies any liability and denies that it violated the FDCPA, it does not oppose the relief requested here.

The parties have reached an agreement whereby Defendant will (1) issue full refunds to all Class members (as defined below) who paid it any money, totaling $2,460; and (2) create a non-reversionary settlement fund in the amount of $16,900 to cover payments to participating Class members. Given historical claims rates in FDCPA class actions, each participating Class member here stands to receive between $50 and $150, separate from any reimbursements they are owed. The settlement fund exceeds 1% of Defendant's book value net worth, and thus is more than Ms. Guyton could have recovered for the Class in statutory damages had she prevailed at trial. *See* 15 U.S.C. § 1692k(a)(2)(B).

Defendant separately will pay the costs of settlement administration and an individual award to Ms. Guyton. Defendant also will pay—separate from the above amounts—class counsel's reasonable attorneys' fees and expenses as awarded by the Court. The parties do not have an agreement on the amounts at this time

Ms. Guyton and her counsel strongly believe that the settlement is fair, reasonable, and adequate, and in the best interests of Class members. As more fully

---

[2]    An entity's failure to register under Fla. Stat. § 559.553(1) supports a cause of action under the FDCPA. *See*, *e.g.*, *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010).

set forth below, Ms. Guyton respectfully requests that this Court enter the accompanying order granting preliminary approval of the settlement.

## Summary of the Settlement

### I.  The settlement provides monetary compensation for each participating Class member, and full reimbursement of all monies Class members paid to Defendant.

The Settlement Agreement[3] defines a settlement class (the "Class") under Rule 23(b)(3) comprised of:

> All persons (a) with a Florida address, (b) from whom Abrahamsen Gindin, LLC attempted to collect a consumer debt, (c) between June 24, 2020 and November 30, 2021.

Defendant has identified 1,690 potential members of the Class, including Ms. Guyton.

Class members who made payments to Defendant will not need to take any action to receive reimbursements. Instead, all Class members who made payments to Defendant in response to its debt collection efforts will automatically receive full reimbursement for the money they paid to Defendant, unless they timely exclude themselves from the settlement.

Class members who did not make payments to Defendant will need to submit a short claim form to receive a pro-rata share of the settlement fund. This claim form

---

[3]    A true and correct copy of the Settlement Agreement is attached as Exhibit 1 to the Declaration of Michael L. Greenwald, attached as Exhibit A.

is to confirm that Class members' debts were personal or familial in nature (as opposed to business or commercial debts).

Finally, in addition to the foregoing, and separate and apart from the settlement fund and reimbursements, Defendant will pay $1,000 to Ms. Guyton as "additional damages" pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i), as well as the costs of class notice and administration, and an award of reasonable attorneys' fees and expenses to counsel for Ms. Guyton, subject to this Court's approval.[4]

## II. The Settlement Agreement provides for direct mail notice to all Class members.

The Agreement requires a robust notice program consisting of direct mail notice to each potential Class member. To that end, the parties have selected Class-Settlement.com to act as the settlement administrator. Class-Settlement.com is an experienced settlement administrator that has previously received approval to administer similar class action settlements. *See, e.g.*, *Cooper v. InvestiNet*, No. 1:21-cv-01562-TWP-DML, 2021 WL 5815800, at *2 (S.D. Ind. Dec. 6, 2021).

**Ms. Guyton and the Class have Article III standing.**

As an initial matter, Ms. Guyton and absent class members have Article III standing to bring their claims under 15 U.S.C. § 1692e and 15 U.S.C. § 1692f. First,

---

[4]    The parties have not reached any agreement on the amount of attorneys' fees or litigation costs and expenses Ms. Guyton will seek. However, Defendant will pay any attorneys' fees, expenses, and costs awarded by the Court separate and apart from the settlement fund so as not to diminish the recovery for the Class.

because Class members paid money—totaling $2,460—to Defendant that Defendant was not entitled to collect, Class members suffered a tangible harm in the form of actual monetary loss, and therefore have standing. *See, e.g.*, *Kamara v. Medicredit, Inc.*, No. 21-cv-23110, 2022 WL 180289, at *3 (S.D. Fla. Jan. 20, 2022) ("Further, as it stands, Plaintiff still seeks actual damages in the FAC, which constitute allegations of an injury-in-fact for standing purposes. As such, Defendant has met its burden of establishing sufficient allegations of an injury-in-fact, irrespective of the pending *Hunstein*[5] decision.").

Second, by reading Defendant's debt collection letter and having to spend time dealing with Defendant's unauthorized debt collection activity, Ms. Guyton and absent class members wasted their time—an injury the Eleventh Circuit recently found constitutes a concrete injury for standing purposes under the FDCPA. *See Toste v. The Beach Club at Fontainbleau Park Condo. Ass'n, Inc.*, No. 21-14348, 2022 WL 4091738, at *4 (11th Cir. Sept. 7, 2022) ("The district court determined that Toste had not demonstrated an injury in fact partly because it considered his emotional damages and the time he spent trying to discover the true amount of his debt to be too insubstantial. Not so. We have explained that a plaintiff's wasted time, in particular, can be a concrete injury for standing purposes.").

---

[5]    Ms. Guyton previously dismissed her claim under 15 U.S.C. § 1692c(b) in light of *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, --- F.4th ----, 2022 WL 4102824 (11th Cir. Sept. 8, 2022). *See* ECF No. 22.

Third, Ms. Guyton and fellow Class members also suffered an intangible injury sufficient to confer standing that bears a close resemblance to the harm flowing from common law abuse of process. *See United States v. Hastings*, 676 F. App'x 932, 934 (11th Cir. 2017) ("Abuse of process is a common-law tort claim."). Indeed, Defendant allegedly pursued collection activity it was not entitled to pursue, an abusive practice causing Class members to pay monies that Defendant was barred by Florida law from collecting from persons in Florida.

Fourth, the judgment of the Florida legislature favors standing here. Florida's lawmakers determined the licensing requirement to be of such import that violations are subject to up to one year of imprisonment. Fla. Stat. § 559.785. For this additional reason, standing exists. *See Gause v. Medical Bus. Consultants, Inc.*, 424 F. Supp. 3d 1175, 1198 (M.D. Fla. Dec. 12, 2019) (Kovachevich, J.) (". . . sections 1692e and 1692f of the FDCPA provide substantive rights to consumers that necessarily protect their Congressionally recognized, concrete interests in being free from abusive debt collection practices, and [] violations of the statutes' provisions therefore give rise to concrete injuries sufficient to confer Article III standing.").

## This Court Should Preliminarily Certify the Class.

### I.    Ms. Guyton satisfies the requirements of Rule 23(a).

To attain certification of a proposed class, a plaintiff must satisfy each of the four requirements of Rule 23(a), commonly referred to as numerosity, commonality,

typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). Because Ms. Guyton seeks certification under Rule 23(b)(3), she must also demonstrate that common issues predominate and that class treatment is the superior method to resolve this dispute. *See Drossin v. Nat'l Action Fin. Servs., Inc.*, 255 F.R.D. 608, 616 (S.D. Fla. 2009) (certifying FDCPA class).

### A.   The Class is so numerous that joinder of all members is impracticable.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The focus of the numerosity inquiry is not whether the number of proposed class members is "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical." *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986) (Melton, J.). The Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Here, Defendant mailed collection letters to approximately 1,690 persons in Florida during the proposed class period, each at a time when it was not registered as a consumer collection agency. Because the Class has over 1,600 potential members dispersed throughout Florida, it is sufficiently numerous that joinder is impracticable. *See Collins v. Erin Capital Mgmt., LLC*, 290 F.R.D. 689, 694 (S.D. Fla. 2013) (plaintiff's preliminary showing of at least 48 class members was

7

sufficient to meet numerosity requirement); *Bennett v. Hayes Robertson Grp., Inc.*, 880 F. Supp. 2d 1270, 1279-80 (S.D. Fla. 2012) (numerosity satisfied with estimated class size of at least 50 persons). Moreover, there is no difficulty identifying the members of the Class, as Defendant possesses their names and mailing addresses.

### B.   Ms. Guyton's claims present questions of law and fact common to the Class.

Rule 23(a) also requires that there be at least one issue common to all class members. *Drossin*, 225 F.R.D. at 615. The commonality element is generally satisfied when a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 687 (S.D. Fla. 2004).

The claims asserted by Ms. Guyton and the Class originate from the same conduct, practice, and procedure on the part of Defendant, namely the attempted collection of debt at a time when Defendant was not registered with the Office of Financial Regulation of the Florida Financial Services Commission as a consumer collection agency. Thus, if brought and prosecuted individually, the claims of each Class member would require proof of the same material and substantive facts. *See, e.g.*, *Collins*, 290 F.R.D. at 694 ("The crux of the dispute is whether Erin Capital's failure to register as consumer collection agency qualifies as a violation of the FDCPA. A determination of this issue would apply equally and objectively to all of the potential plaintiffs in this action."). For these reasons, claims brought as a result

8

of uniform debt collection conduct are routinely certified as class actions. *See, e.g.*, *Klewinowski v. MFP, Inc.*, No. 8:13-cv-1204, 2013 WL 5177865 (M.D. Fla. Sept. 12, 2013) (Hernandez Covington, J.); *Lewis v. ARS Nat'l Servs., Inc.*, No. 2:09-cv-1041, 2011 WL 3903092 (N.D. Ala. Sept. 6, 2011); *Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp.*, No. 8:08-cv-493, 2008 WL 3850657 (M.D. Fla. Aug. 14, 2008) (Lazzara, J.); *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692 (S.D. Fla. 2004); *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665 (M.D. Fla. 1999) (Adams, J.). This case should be no different.

### C.    Ms. Guyton's claims are typical of the claims of the Class.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Although similar to commonality in that it concentrates on the "nexus" between class members and the named class representative, typicality differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class. *Piazza v. EBSCO Indus. Co.*, 273 F.3d 1341, 1346 (11th Cir. 2001). "The test for typicality, like commonality, is not demanding." *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996) (Schlesinger, J.) ("The Eleventh Circuit has held that the requirement of typicality is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent, and are based

9

on the same legal or remedial theory; furthermore, typicality will not be destroyed by factual variations.").

Here, Ms. Guyton and the members of the Class allegedly suffered by way of a common practice in that they each received a debt collection letter from Defendant at a time when Defendant was not registered as a consumer collection agency. *See, e.g.*, *Collins*, 290 F.R.D. at 696 (since class members "were each subject to [Erin Capital]'s unlicensed and unlawful collection activity," typicality was satisfied). Thus, Ms. Guyton possesses the same interests and has suffered the same injuries as each member of the Class.

To be sure, there is no doubt that Ms. Guyton is a member of the Class and that her claims are typical of those of the other members of the Class. *See* Dkt. No. 1-1 (demonstrating that Ms. Guyton is a member of the Class). As a result, Ms. Guyton's claims are typical of those of the Class she seeks to represent.

### D.    Ms. Guyton, and her counsel, will fairly and adequately protect Class members' interests.

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To adequately represent a class, a named plaintiff must show that she can act in a fiduciary role representing the interests of the class and has no interests antagonistic to the interests of the class. *In re Ins. Mgmt. Sols. Grp., Inc.*, 206 F.R.D. 514, 516 (M.D. Fla. 2002) (Lazzara, J.) (certifying class action).

10

Here, Ms. Guyton's claims are aligned with the claims of members of the Class. She has been committed to vigorously pursuing Class members' claims with their best interests in mind. And Ms. Guyton has no interests adverse to, or which directly and irrevocably conflict with, the interests of other members of the Class.

Moreover, Ms. Guyton has retained the services of Greenwald Davidson Radbil PLLC ("GDR")—a firm with deep experience in class action litigation. *See* Ex. A at ¶¶ 10-11 (collecting cases). As a result, Ms. Guyton satisfies Rule 23(a)(4).

### E.    This Court should appoint GDR as Class Counsel.

In appointing class counsel, Rule 23(g)(1)(A) requires the Court to consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit in representing the class." GDR will continue to prosecute this action, as it has done to date, in an efficient and effective manner. In addition to satisfying the adequacy prong of Rule 23(a)(4), GDR also satisfies the considerations of Rule 23(g) and should be appointed as Class Counsel. *See* Ex. A at ¶¶ 9-18.

### II.    Ms. Guyton satisfies the requirements of Rule 23(b)(3).

In addition to meeting the four requirements of Rule 23(a) and the requirements of Rule 23(g), parties seeking class certification must demonstrate that

11

the action is maintainable under one of the three subsections of Rule 23(b). Pertinent here, Rule 23(b)(3) requires that questions of law or fact common to the class predominate over questions affecting the individual members and that, on balance, a class action is superior to other methods available for adjudicating the controversy.

### A.   Common questions of law and fact predominate over any individualized inquiries.

"Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004). Indeed, "[p]redominance means that the issues in a class action must be capable of generalized proof such that the issues of the class predominate over those issues that are subject only to individualized proof." *Gaalswijk-Knetzke*, 2008 WL 3850657, at *4. As the Northern District of Alabama explained in certifying a class action based on an allegedly misleading form debt collection letter:

> Here, not only will class-wide issues of proof predominate, but it is unlikely that there will be any issues of individualized proof. . . . Additionally, the Court need not determine whether the named plaintiff or other putative plaintiffs read or were confused by the notice, as the standard is whether the least sophisticated consumer would have been misled.  Thus, the only individualized proof necessary will be whether each class member received a letter identical to [Ms. Guyton's]. Since that is a prerequisite for joining the class, the court finds that common questions of fact and law predominate in this case.

*Lewis*, 2011 WL 3903092, at *5.

The same is true here. The central legal issue in this case is whether Defendant violated the FDCPA by collecting debts from consumers in Florida without registering as a consumer collection agency. This one legal issue predominates over any individual questions, and thus satisfies Rule 23(b)(3). *See, e.g.*, *Collins*, 290 F.R.D. at 700 ("As previously established, the common issue of whether Erin Capital violated the FDCPA by failing to register as a consumer collection agency, would have a direct impact on every class member's effort to establish liability and the class members' entitlement to monetary relief."); *Roundtree v. Bush Ross, P.A.*, 304 F.R.D 644, 662 (M.D. Fla. 2015) (Whittemore, J.) ("Here, the issues of whether Bush Ross is a debt collector and engaged in collection activity and whether Bush Ross engaged in an act or omission prohibited by the FDCPA are issues common to Roundtree and the members of each of the proposed classes.").

As a result, Ms. Guyton readily satisfies the predominance requirement. *See, e.g.*, *Manno v. Healthcare Revenue Recovery Grp.*, 289 F.R.D. 674, 689 (S.D. Fla. 2013) ("As to the FDCPA class, the Court finds that common issues predominate.").

      **B.**    **A class action is superior to other available methods for the fair and efficient adjudication of Ms. Guyton's claims and those of Class members.**

When evaluating the superiority requirement of Rule 23(b)(3), the Court must consider (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation

concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

As the Eleventh Circuit explained, "[m]any courts comparing class actions to other adjudicative methods in FDCPA cases have concluded that class actions are a more efficient and consistent means of trying the legality of collection letters." *Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 538 (11th Cir. 2017). This is in part because "separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Jones v. Advanced Bureau of Collections LLP*, 317 F.R.D. 284, 294 (M.D. Ga. 2016). Moreover, "[c]lass members would have less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery should they be required to individually litigate their claims." *Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 641 (D. Or. 2015).

Because the claims in this case all arise from uniform debt collection conduct, a class action is the superior vehicle for determining the rights of absent class members. In certifying FDCPA claims, the Southern District of Florida explained:

> In addition, the Court finds that the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating Plaintiffs' claims under the FDCPA [].

14

*Muzuco v. Re$ubmitt, LLC*, 297 F.R.D. 504, 522 (S.D. Fla. 2013). For these reasons, a class action is the superior method to adjudicate this matter. *See Gaalswijk-Knetzke*, 2008 WL 3850657, at *5 ("Congress, however, did not contemplate that suits under the FDCPA would be adjudicated by means of large numbers of individuals filing separate suits. On the contrary, Congress provided for class actions as a means for recovery to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action.").

### This Court should preliminarily approve the parties' settlement as fair, reasonable, and adequate under Rule 23(e).

Rule 23(e) requires that this Court make a preliminary determination of fairness for the class settlement presented:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *see also* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.25 (4th ed. 2002).

Once the preliminary fairness evaluation has been made and notice has been issued, the Court then holds a final fairness hearing to determine whether the proposed settlement is truly fair, reasonable, and adequate. *See* MANUAL FOR COMPLEX LITIGATION § 21.633-34; NEWBERG, § 11.25. That is, preliminary approval requires only that this Court evaluate whether the proposed settlement was negotiated at arm's-length and is within the range of possible litigation outcomes such that "probable cause" exists to disseminate notice and begin the formal fairness process. *See* MANUAL FOR COMPLEX LITIGATION § 21.632-33.

A full fairness determination is not necessary at this early juncture; nevertheless, the Eleventh Circuit has identified six factors for analyzing the reasonableness and adequacy of a class action settlement under Rule 23(e): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994); *accord Harvey v. Hammel & Kaplan Co., LLC*, No. 3:19-cv-640-J-32JRK, 2020 WL 7138568, at *5 (M.D. Fla. Dec. 7, 2020) (Corrigan, J.). Rule 23(e) itself also requires a court to consider several additional factors, including that the class representative

16

and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

Here, each relevant factor supports the conclusion that the parties' settlement is fundamentally fair, adequate, and reasonable, and should receive preliminary approval. And in applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by the courts. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement.").

### I.    There was no fraud or collusion behind the parties' settlement.

The parties negotiated this settlement over the course of months and after Ms. Guyton pursued both party and third-party discovery. And that agreement occurred only after numerous discussions between counsel, and after Defendant provided Plaintiff with information concerning the size of the Class and Defendant's net worth. Given the substantial recoveries for Class members, there can be no doubt that the settlement is not a product of collusion.

### II.    The complexity, expense, and duration of the litigation favors preliminary approval.

Turning to the second factor, there is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D.

17

457, 466 (S.D. Fla. 2002). Indeed, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable[,] and settlement conserves judicial resources." *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003).

This case was no different. If the litigation had moved forward, Ms. Guyton would have had to obtain class certification over Defendant's objection, and prevail at summary judgment, or trial, and on a likely appeal, to obtain any benefits for Class members. *See, e.g.*, *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers ... to the vagaries of a trial"). Moreover, because statutory damages under the FDCPA are not mandatory, there is no guarantee that Ms. Guyton would have recovered any money for the Class. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable.").

Given these considerations, preliminary approval of the settlement is appropriate. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("It would seem unwise, therefore, to risk the substantial benefits of the settlement to the uncertainty of trial.").

### III.    The parties have sufficiently developed the factual record to enable Ms. Guyton and her counsel to make a reasoned judgment concerning settlement.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992) (Nimmons, J.).

Here, the parties had extensive discussions about the merits of the claims. In addition, Defendant provided Ms. Guyton with information concerning the size of the Class and Defendant's net worth—the sole determinant of the Class's total potential statutory damages award in this action. *See* 15 U.S.C. § 1692k(a)(2)(B). Defendant also disclosed the total amount it collected from Class members.

Given the above, and that GDR is well-versed in FDCPA litigation, *see generally* Ex. A, the settlement was therefore consummated when the parties had a

good view towards the strengths and weaknesses of their respective positions, and an understanding of the maximum potential recovery for the Class. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which "to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

### IV. The probability of Ms. Guyton's success on the merits coupled with the range of possible recovery favor preliminary approval.

Next, this Court also must consider "the likelihood and extent of any recovery from the defendant[] absent . . . settlement." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 314.

This settlement represents an extraordinary result for Class members. First, Class members will be reimbursed for every dollar paid to Defendant. Second, and in addition, Defendant will create a non-reversionary settlement fund totaling $16,900, which amounts to more than 1% of Defendant's net worth. *See* 15 U.S.C. § 1692k(A)(2)(B) (limiting statutory damages to "the lesser of $500,000 or 1 per centum of the net worth of the debt collector"); *see also Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000) ("net worth" within meaning of § 1692k means "balance sheet or book value net worth" of assets minus liabilities). From this settlement fund, participating Class members are expected to receive between $50 and $150, depending on the number who submit valid claims.

Also noteworthy, there is no guarantee of full statutory damages at trial because the FDCPA's damages provision is permissive rather than mandatory. That is, the law provides for statutory damages awards up to certain amounts after balancing such factors as the nature of Defendant's noncompliance, the number of persons adversely affected, and the extent to which Defendant's noncompliance was intentional. *See* 15 U.S.C. § 1692k(b)(2). But there is no minimum award.

Accordingly, even had Ms. Guyton prevailed at trial, the jury may have awarded little in the way of statutory damages, or even potentially none at all. Moreover, the risk of a minimal damages award was not merely hypothetical. *See, e.g.*, *Dickens v. GC Servs. Ltd. P'ship*, 220 F. Supp. 3d 1312, 1324 (M.D. Fla. 2016) (Moody, Jr., J.) ("Having considered these factors and the parties' briefs, the Court finds that the statutory award in this case should be nominal, whether that award applies to Dickens alone or a class of plaintiffs."), *vacated and remanded,* 706 F. App'x 529 (11th Cir. 2017); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* No. 1:06 CV 1397, 2011 WL 1434679, at *11 (N.D. Ohio 2011) (awarding no "additional damages" to members of the class).

Given the foregoing, the immediate relief provided by the settlement is substantial and represents an excellent result for the Class that could not have been bested at trial. Not surprisingly, then, the settlement here compares favorably to other similar FDCPA class settlements approved throughout the country. *See, e.g.*,

21

*Sullivan v. Marinosci Law Grp., P.C., P.A.*, No. 9:18-cv-81368, 2019 WL 6709575, at *2 (S.D. Fla. Nov. 22, 2019) ($27.51 per class member); *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *3 (E.D. Pa. Sept. 13, 2016) ($10.92 per class member); *Hall v. Frederick J. Hanna & Assocs., P.C.*, No. 1:15-cv-3948, 2016 WL 2865081, at *3 (N.D. Ga. May 10, 2016) ($10 per class member); *Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 3:15-cv-418, 2016 WL 1273297, at *3 (S.D. Ohio Mar. 31, 2016) (same).

In sum, considering the benefits obtained here, in comparison to those possible at trial and those obtained in other similar actions, plus the risks in moving forward, this factor supports preliminary approval of the settlement.

## V.    The opinions of Ms. Guyton and her counsel strongly favor preliminary approval.

Both Ms. Guyton and her counsel firmly believe that the settlement here is fair, reasonable, and adequate, and in the best interests of Class members. What's more, GDR is extremely experienced in class action litigation in general and FDCPA class actions in particular. *See* Ex. A at ¶¶ 10-18. Correspondingly, Ms. Guyton's and her counsel's strong support for this settlement militates toward this Court's preliminary approval of the same.

## VI.    The settlement treats members of the Class equitably.

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. Here, each Class member has the same claims,

and as a result, the settlement provides that each participating Class member will receive an equal portion of the settlement fund, plus full reimbursement of all money they paid to Defendant. As such, this factor supports preliminary approval.[6]

**This Court should approve the proposed notice to Class members.**

Under Rule 23(e), this Court must also "direct notice in a reasonable manner to all class members who would be bound" by the settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement must be the "best notice practicable." *See* Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, the parties have agreed to a notice program to be administered by a third-party settlement administrator that will use all reasonable efforts to provide direct mail notice, including a straightforward, detachable claim form, to each member of the Class. This notice plan complies with Rule 23 and due process because, among other things, it informs Class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Class and claims asserted; (3) the binding effect of a judgment if the class member does

---

[6]     The $1,000 award to Ms. Guyton is specifically authorized by statute and does not constitute a service award. *See* 15 U.S.C. § 1692k(a)(2)(B) (authorizing statutory damages of up to $1,000 to the named plaintiff, plus such amount allowed for class members).

not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding Ms. Guyton's request for statutory damages and reimbursement of her attorneys' fees and expenses; and (6) how to submit claims and make inquiries. Fed. R. Civ. P. 23(c)(2)(B); MANUAL FOR COMPLEX LITIGATION § 21.312.

In short, this notice plan ensures that Class members' due process rights are amply protected and, as a result, this Court should approve it. *See* Fed. R. Civ. P. 23(c)(2)(A); *Acuna v. Medical-Commercial Audit, Inc.*, No. 9:21-cv-81256-WPD, 2022 WL 404674, at *2 (S.D. Fla. Feb. 9, 2022) (approving class notice).

## This Court should schedule a final fairness hearing.

Finally, Ms. Guyton respectfully requests that this Court set a date for a final fairness hearing at the Court's convenience, approximately 90 to 120 days after the Court preliminarily approves the settlement.

## Conclusion

The parties' settlement here represents an excellent result for Class members while providing immediate relief rather than continued delays and risks inherent in litigation. Ms. Guyton respectfully requests that this Court enter the accompanying order granting preliminary approval to the parties' class action settlement. As noted, Defendant does not oppose this relief.

24

## Local Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g), undersigned counsel certifies that he conferred with counsel for Defendant. Defendant does not oppose the relief requested by Plaintiff. Defendant, however, denies any liability, denies it violated the FDCPA, and denies any wrongdoing.

Dated: September 29, 2022        */s/ Michael L. Greenwald*
Michael L. Greenwald
Florida Bar No. 761761
James L. Davidson
Florida Bar No. 723371
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33487
Tel: (561) 826-5477
mgreenwald@gdrlawfirm.com
jdavidson@gdrlawfirm.com

Counsel for Ms. Guyton and the Class